1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7    NIKKI B.,

8                          Plaintiff,

9              v.

10   NANCY A. BERRYHILL, Deputy
     Commissioner of Social Security for
11   Operations,

12
                          Defendant.
13

CASE NO. C17-5970-MAT


ORDER  RE: SOCIAL SECURITY
DISABILITY APPEAL

14          Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

15   the Social Security Administration (Commissioner).    The Commissioner denied plaintiff's

16   applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after

17   a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the

18   administrative record (AR), and all memoranda, this matter is REMANDED for further

19   administrative proceedings.

20                          **<u>FACTS AND PROCEDURAL HISTORY</u>**

21          Plaintiff was born on XXXX, 1979.[1]   She completed the eleventh grade of high school,

22

23   _____

     [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

obtained her GED, and attended training to become a medical administrative assistant. (AR 36-37.) Her past work included jobs as a customer service representative, receptionist, data entry clerk and shipping clerk, customer service worker, and administrative clerk. (*See* AR 1357-58.)

Plaintiff protectively filed DIB and SSI applications in 2011, alleging disability beginning September 1, 2004. (AR 210, 212.) Her date last insured for DIB is June 30, 2012. Her applications were denied initially and on reconsideration.

On July 11, 2013, ALJ David Johnson held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 27-74.) At hearing, plaintiff's counsel amended the alleged onset date to August 19, 2011. (AR 31.) On September 5, 2013, the ALJ issued a decision finding plaintiff not disabled. (AR 10-21.) The Appeals Council denied a request for review (AR 1-4), and plaintiff appealed that final decision to this Court.

On March 22, 2016, the Court found the ALJ erred in failing to discuss one aspect of a physician's opinion, and remanded for further proceedings. (AR 1479-96.) The Appeals Council vacated the final ALJ decision for further proceedings consistent with the Court's order, and directed consolidation with a duplicate, May 2015 SSI application. (AR 1501.)

On remand, the ALJ held hearings on November 18, 2016 and March 13, 2017, taking testimony from plaintiff and a VE in the first hearing and from a different VE in the second hearing. (AR 1373-1452.) On July 26, 2017, the ALJ issued a second decision finding plaintiff not disabled. (AR 1430-60.)

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's Crohn's disease, status post colon resection and ileostomy, anemia, asthma, restless leg syndrome, and obesity severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform light work that does not require lifting or carrying more than ten pounds; standing more than thirty minutes at a time and two hours total in a workday, and the same amounts for walking; sitting more than one hour at a time and four hours total in a workday; more than occasional overhead reaching, pushing, or pulling, balancing, stooping, kneeling, crouching, or climbing ramps or stairs; never climbing ladders, ropes, or scaffolds, or exposure to hazards; and work allowing for ready access to a clean restroom within 100 feet of the workstation.  With that assessment, the ALJ found plaintiff able to perform past relevant work as a customer service representative, receptionist, data entry clerk, shipping clerk, customer service worker, and administrative clerk.[2]

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

---

[2] The ALJ identified all of these jobs in the body of the decision, while initially identifying only the jobs of customer service worker and administrative clerk in a heading.  (AR 1357-58.)

retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a production line solderer, electric accessories assembler, semiconductor dies loader, charge account clerk, and call out operator.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in the ALJ's consideration of medical evidence and opinions, symptom testimony, in the RFC assessment, and at steps four and five. She requests remand for an award of benefits or, alternatively, further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1996). In considering the intensity, persistence, and limiting effects of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.[3]

The ALJ here found plaintiff's symptom testimony undermined for several different reasons. He provided specific, clear, and convincing reasons in support of that conclusion.

A.    Activities

The ALJ considered that plaintiff completed online coursework for about five months, eight hours a day, toward her medical assistant certificate, until her computer broke. (AR 1350 (citations to record omitted).) She applied for jobs, worked as a babysitter, and served as the primary caregiver for her children. She can get her children ready for school and onto the bus, and help with homework. She can travel outside the home independently, tend to her personal care, prepare meals, pick up around the house, wash dishes, do laundry, perform minor yard work, shop in stores, sew, complete word searches and Sudoku games, count change, handle personal finances, and drive. The ALJ found the activities inconsistent with the degree of limitation alleged and undermining her testimony.

Plaintiff also, near the amended alleged onset date, reported working twelve-hour shifts, ten days in a row. (AR 512 (July 2011: "Now she feels back to her normal self and would like to return to work.")) This "very demanding schedule . . . might have contributed to an exacerbation

---

[3] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

1   of her symptoms." (AR 1350.) It was more demanding than the forty-hour or equivalent work

2   schedule contemplated in physical assessments of State agency medical consultants or in the RFC.

3       Plaintiff states her ability to complete coursework, at home and at her own pace, is fully

4   consistent with her testimony of a need to take extra breaks at work. She denies her ability to

5   apply for work shows she could sustain work, notes she babysat only three times, earning little

6   money (AR 39-40), and notes even disabled people need to care for their children. Plaintiff states

7   the ALJ in large part cites to activities identified in a December 2011 disability report, prior to her

8   April 2012 ileostomy and problems with her ostomy bag, and prior to the November 2016 hearing,

9   when she was homeless and living in her car in a Walmart parking lot (*see* AR 1379-80, 1392).

10  She argues her July 2011 work activity does not show she could now work forty hours a week

11  without extra breaks to attend to her ostomy bag.

12      The ALJ, however, rationally construed the evidence to show activities inconsistent with

13  the degree of impairment alleged. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities

14  may undermine testimony where they (1) contradict the claimant's testimony or (2) meet the

15  threshold for transferable work skills), and *Morgan v. Commissioner of the SSA*, 169 F.3d 595,

16  599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation,

17  it is the ALJ's conclusion that must be upheld.") The ALJ did not rely solely on activities reported

18  in December 2011 or prior to the April 2012 ileostomy. For example, in July 2013, plaintiff

19  testified she worked on her coursework "eight hours a day, every day," while her kids were at

20  school. (AR 37.) In November 2016, she testified she worked at a gift shop for two months in

21  mid-2015, worked full-time at a gas station for several months in early to mid-2016, and continued

22  to look for work. (AR 1397-81, 1388 ("Q[.] Do you think you could work? Eight hours a day,

23  five days a week the way normal people would? A[.] Yeah.")) Records obtained after the Court

remand include plaintiff's October 2016 report she could drive, bathe and dress herself, that she prepares food/dinner, reads, and watches television, was uncomfortable sitting for long periods to work on a computer, could maintain a home if she had one, probably could not do yard work, got her son ready for school, did laundry, some light cleaning, and helped her son with homework. (AR 1806.)

Nor did the ALJ inappropriately consider evidence of plaintiff's activities prior to her ileostomy or the change in her living conditions. The ALJ was tasked with considering plaintiff's request for disability benefits as of her amended alleged onset date of August 19, 2011. The finding of inconsistency between plaintiff's symptom testimony and the evidence of her activities has the support of substantial evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (court may not substitute its judgment for that of the ALJ when evidence reasonably supports either confirming or reversing the ALJ's decision).

B.    Medical Evidence

While subjective pain testimony cannot be rejected solely due to a lack of full corroboration by objective medical evidence, the medical evidence remains a relevant factor in assessing symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p; 20 C.F.R. §§ 404.1529(c)(2), 416.9529(c)(2). An ALJ properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *See id.*; §§ 404.1529(c)(4), 416.9529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242

F.3d 1144, 1148 (9th Cir. 2001).

The ALJ here found the objective medical signs and findings inconsistent with the degree of limitation alleged. (AR 1351 (citations to record omitted).) Following the April 2012 ileostomy, plaintiff on occasions reported pain around the ileostomy site and was prescribed medications. In October 2015, she presented at the emergency room requesting a new ostomy bag because her bag was leaking, and in November 2016 she reported difficulty sleeping due to the need to keep emptying her ostomy bag. However, in July 2012, plaintiff reported doing extremely well, that her stoma was working well, and she had no complaints. In February 2014, she reported she had not gone to her November 2013 gastrointestinal appointment because her Crohn's disease had not acted up in two years despite not taking her medication. She had no problems with her ostomy and "was 'feeling so good' and she thought she could go back to work." (*Id.*) In July 2014, she had stitches removed without problems and was otherwise well. In December 2014, she failed to show for medical appointments and, in October 2015, she denied abdominal pain or acute abdominal issues other than requiring a new ostomy bag. In July 2016, plaintiff reported she had not been seen by an ostomy nurse since 2012. She was off her medications and doing well, and the abdomen examination was normal. In November 2016, plaintiff denied any gastrointestinal or genitourinary symptoms. Her iron deficiency anemia appeared to improve. These inconsistencies undermined plaintiff's symptom reports.

Plaintiff argues the ALJ necessarily failed to properly evaluate the medical evidence given the errors in evaluating medical opinions, improperly rejected testimony based solely on an absence of objective medical support, and provided no more than a selective summary of evidence. She contrasts her reports of feeling good with flare-ups when she feels much worse and otherwise denies inconsistency, providing a lengthy description of evidence and testimony.

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. As discussed below, the ALJ properly assessed the medical opinion evidence. The ALJ also, in assessing symptom testimony, properly discussed both plaintiff's testimony and significant, probative evidence in the record, explained why the evidence supported his conclusion, and, in so doing, did not rely solely on an absence of fully corroborating objective medical evidence. As with her activities, plaintiff construes the evidence differently. The ALJ's interpretation is rational, supported by substantial evidence, and properly upheld. *See Morgan*, 169 F.3d at 599; *Tackett*, 180 F.3d at 1098.

C.   Treatment

In evaluating symptom testimony, an ALJ properly considers evidence associated with treatment. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. An ALJ may, for example, consider lack of treatment, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), and unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). An ALJ may also consider evidence a condition is effectively controlled with medication. *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006).

As noted above, the ALJ considered plaintiff's July 2016 admission she had not seen an ostomy nurse since 2012, and that her October 2015 emergency room visit was solely to obtain a replacement for a leaking ostomy bag. (AR 1351; *see also* AR 1790 (plaintiff "needed supplies and she couldn't get to her pharmacy before 0800."; "Patient received ostomy materials from central supply, stated 'your [sic] not putting that on me, I will do it myself can I go now?'").) The ALJ considered that doctors repeatedly expressed concern about plaintiff's noncompliance with treatment recommendations. (AR 1351-52 (citations to record omitted).) In November 2011,

plaintiff was advised to consistently take her iron supplement. Her doctor repeatedly listed noncompliance with medical treatment as one of her chronic problems. Treatment notes from August 2011 reflect she "no showed" at a gastrointestinal clinic three times in a row without calling to cancel. She continued to smoke despite being told her Humira medication, "'may not be any better than placebo in regard to efficacy for her Crohn's as long as she continues to smoke[.]'" (AR 1352.) Her doctor advised she had a "'responsibility to show up for appointments and comply with management recommendations (i.e. smoking cessation) in order to optimally manage her Crohn's[.]'" (*Id.*) The record elsewhere reflected repeated counseling regarding the importance of smoking cessation. Yet, plaintiff repeatedly expressed her unwillingness to stop smoking, even in light of warnings it undercut the effectiveness of her medication. Plaintiff also admitted to missing doses of Humira. Charts prior to her surgery did not include any such admissions. In June 2012, a doctor noted "'noncompliance and smoking will both set her up for therapeutic failure[.]'" (*Id.*) Plaintiff was still smoking as of a November 2012 hospital admission. She also failed to show for her gastrointestinal appointment in November 2013. The ALJ found the lack of follow through with measures recommended to relieve plaintiff's conditions inconsistent with the degree of limitation reported, and the inconsistencies to undermine the weight that could be given her symptom reports.

The ALJ also considered inconsistencies associated with plaintiff's asthma, including her continued smoking despite recommendations to stop, normal physical examination findings, and the little treatment received. (AR 1352-53.) Finally, the ALJ considered that plaintiff's restless leg syndrome was found to be well controlled with medication.

Plaintiff asserts her variable compliance with treatment recommendations resulted from her poor insight into her condition, and deems consideration of her continued smoking

inappropriate given that smoking is highly addictive. Plaintiff does not, however, undermine the ALJ's rational interpretation of the record or the substantial evidence support for his conclusions. The ALJ drew reasonable inferences from the significant gaps in treatment, repeated failures to appear for appointments or otherwise comply with treatment recommendations, and plaintiff's own reporting her impairments were not as limiting as alleged. (*See, e.g.*, AR 2155 (February 2014: "When I asked why she didn't go to [gastrointestinal appointment] in Nov 2013, she said 'my Crohn's hasn't acted up in 2 years now, and I'm not taking any medicine.' 'I'm feeling so good I think I can go back to work now.' She plans to work part time at the E-cigarette store where she has friends that work. No problems with her ostomy.")) While the addictive nature of nicotine is pertinent, the ALJ here reasonably considered this evidence as one among many factors undermining her symptom testimony. *See Hurter v. Astrue*, No. 10-35997, 2012 U.S. App. LEXIS 350 at *4-5 (9th Cir. Jan. 6, 2012) (failure to follow prescribed treatment without adequate explanation relevant to credibility analysis: "Hurter continues to smoke despite warnings from her doctors regarding its impact on her lung condition and has 'decreased adherence' to her prescribed exercises due to forgetfulness."); *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding a claimant continued to smoke "up until one month before her hearing, despite complaining of debilitating shortness of breath and acute chemical sensitivity[,]" was supported by the record and belied the claim of debilitating respiratory illness; even if improperly considered given addictive nature of cigarettes, as argued by the claimant, any error would be harmless given the other reasons for discounting the claimant's testimony). *Cf. Ross v. Berryhill*, No. 15-35173, 2017 U.S. App. LEXIS 18814 at *3 (9th Cir. Sept. 28, 2017) (failure to heed medical advice to stop smoking provided, "at most, a tenuous basis for discounting her testimony about the severity of her pain and fatigue.")

D.    Other Inconsistencies

The ALJ found other inconsistencies to undermine the weight that could be afforded plaintiff's testimony.  (AR 1352 (citations to record omitted).)  Plaintiff testified she did not think her doctors should have put her on Humira and she does not know why it did not work, but chart notes reflected her doctor repeatedly counseled her continued smoking would nullify its benefits. She testified she fought with her doctor about resuming Humira after surgery, while chart notes reflected she requested to resume Humira and her doctor expressed misgivings given her continued smoking.  She testified she quit smoking in November 2012, but told emergency room staff that same month she was still smoking and treatment notes showed she continued to smoke well into 2013.  In September 2015, examining psychologist Dr. J. Keith Peterson noted inconsistencies in testing, which the ALJ construed as indicating plaintiff was presenting herself as more limited than she was.  (AR 1353 (citations to record omitted).)  Finally, the ALJ considered that plaintiff provided inconsistent reports of her illegal drug use, testifying at the first hearing and reporting to Dr. Peterson she never used illegal drugs, and telling treatment providers she had used methamphetamine daily for twenty-one years, except during her pregnancies, and that she started using methamphetamine one year prior to a July  2016 examination.

The Commissioner concedes error in the ALJ's consideration of plaintiff's statements about her drug use.  SSR 16-30 (in evaluating symptom testimony, adjudicators focus on supportability of alleged limitations, not an assessment of "overall character or truthfulness"). The ALJ, however, otherwise appropriately considered evidence of inconsistencies.  *Id*. ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.")  Given the multiple other specific, clear, and convincing reasons

offered in support of the ALJ's conclusion, an error in the analysis is properly deemed harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless where "'inconsequential to the ultimate nondisability determination.'"); *Carmickle*, 533 F.3d at 1162-63 (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless).

## Medical Opinions

Plaintiff argues the ALJ failed to properly evaluate the medical evidence and erred in his assessment of medical opinions provided by examining physicians Drs. Raymond West, Beth Liu, and Gary Gaffield, by examining psychologist Dr. Peterson, and by the non-examining State agency physicians. Because the record contained contradictory opinions, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for rejecting a doctor's opinion. *Lester*, 81 F.3d at 830-31. For the reasons set forth below, the Court finds no error in the ALJ's consideration of the medical opinion or other medical evidence.

A.  Dr. Raymond West

Dr. West examined plaintiff in April 2013. (AR 1326-31.) Plaintiff reported that, following surgical procedures in 2006, she was fine until 2012, the year of her ileostomy. (AR 1326.) The examination was normal other than a slight suggestion of antalgia, probably positive Romberg sign, and an ability to squat and back bend "satisfactorily, but with great care concerning her relatively full and heavy ileostomy bag." (AR 1328-30.)

Dr. West noted, objectively, "obesity, ileostomy and unsatisfactory use of ileostomy bag[,]" and opined plaintiff could stand and walk for up to five, possibly six hours cumulatively in an eight-hour day, provided "she is able to take frequent and possibly prolonged breaks." (AR 1330.) "In a comfortable chair, [plaintiff] is able to sit for up to five or six hours cumulatively in

an eight-hour day providing she is able to move about for short periods from time to time." (*Id.*) Plaintiff could lift and carry fifteen-to-twenty pounds, at least occasionally and for a few steps, but possibly "only when bag is empty or nearly so." (AR 1330-31.) She could bend, at least occasionally, but squatting, kneeling, crawling, climbing, pushing, and pulling were limited to rare and urgent because of a relatively unsatisfactory ileostomy bag. (AR 1331.) She had no manipulative or other limitations.

The ALJ assigned Dr. West's opinion little weight. (AR 1355.) He found the relatively normal physical examination inconsistent with the degree of limitation opined, and the opinion mostly consistent with the evidence showing plaintiff had an ostomy bag, but relatively normal examination findings, with no recent gastrointestinal and genitourinary symptoms. (*Id.* (citing AR 2137, 2146-47 (July and November 2016 treatment notes).) Dr. West examined plaintiff, but only did so once and did not provide treatment. He appeared to base at least part of his opinion on plaintiff's reports.

As necessitated by this Court's order directing remand (*see* AR 1484-86), the ALJ considered the fact Dr. West qualified his opinion of plaintiff's "sitting abilities to being in a 'comfortable chair.'" (AR 1355.) Neither the examination, nor opinion indicated this meant anything other than a typical, padded, office-type chair. The ALJ found a medical need for a comfortable chair to lack support in the examination, in plaintiff's assertions, and in the remainder of the record, observing that both supportability and consistency serve as important factors in weighing medical opinions. Dr. West made no findings on examination of issues with sitting discomfort, and did not identify any impairments that might cause such discomfort. No other examiner or provider noted issues with sitting or a basis for a special chair. Dr. Gaffield had Dr. West's opinion to consider and did not similarly opine. Plaintiff told Dr. West she limits her sitting

due to concern of her ileostomy bag filling, not due to discomfort or any other issues. (AR 1330.) These considerations undermined any assertion of a medically-based requirement for a comfortable chair.

The ALJ further considered that, at the hearing following remand, plaintiff testified a comfortable chair meant the ability to lean back and provide her ileostomy bag would sit securely. (AR 1355-56.) "Inconsistently, there was no issue mentioned with sitting at the first hearing." (AR 1356.) Nor did plaintiff mention difficulty sitting in her past work. She testified absences caused her job to end. The VE included this past work as among the occupations plaintiff could return to. This inconsistency was one among several throughout the hearings and in the record, and plaintiff's self-reports could be given no weight.

The ALJ found Dr. West's opinion lacked consistency with other evidence in the record. (*Id.*) The evidence supported a limitation that, if sitting for up to six cumulative hours, the chair be comfortable to the degree of a typical office-type chair. The March 2017 VE testimony regarding stools would not qualify as a comfortable chair, and differed from the typical office-type chair associated with the sedentary occupations identified by the VE at the first hearing. The ALJ found plaintiff not as limited as Dr. West opined and noted considerable evidence and opinions had been added to the record since the first decision, and none of the new opinions found plaintiff as limited as did Dr. West.

Finally, and as directed in the Court's order, the ALJ considered whether Dr. West's opinion had a bearing on the weight properly afforded the opinions of non-examining State agency physicians Drs. Norman Staley and Drew Stevick. (*Id.*) Drs. Staley and Stevick did not have Dr. West's opinion when they provided their 2012 opinions. The lack of supportability for Dr. West's opinion, as well as the lack of consistency with other signs, findings, symptom reports, and other

opinions, indicated Dr. West's opinion was entitled to little weight. Since Dr. West issued his opinion, several additional opinions indicated plaintiff had a greater capacity than originally opined by Drs. Staley and Stevick in 2012. While well-supported by the evidence possessed at the time, Dr. Stevick possessed a more thorough longitudinal perspective when he again opined in 2016 and did not then find a need for a special chair.

Plaintiff fails to demonstrate error. The ALJ did not err in observing Dr. West served as an examining, not a treating source, and accurately noted he examined plaintiff on only one occasion. *See* 20 C.F.R. 404.1527(c)(2), 416.927(c)(2). Nor did the ALJ err in considering that Dr. West appeared to base at least part of his opinion on plaintiff's self-reports. *See generally Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan*, 169 F.3d at 602).

The ALJ further provided specific and legitimate reasons for assigning little weight to the opinion regarding sitting up to five or six hours in a comfortable chair. That is, the ALJ properly pointed to inconsistency with Dr. West's own examination findings, with all of the other medical opinions in the record, with plaintiff's own assertions, and with the medical record as a whole. *See, e.g.*, *Tommasetti*, 533 F.3d at 1041 (ALJ may reject opinion based on inconsistency with the medical record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject opinion due to discrepancy or contradiction between opinion and physician's own notes or observations); *Rollins*, 261 F.3d at 856 (noting a claimant never claimed to have problems with many conditions and activities a physician instructed her to avoid); *Morgan*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within and between physicians' reports).

Plaintiff asserts Dr. West's findings regarding her problems with her ostomy bag support

the need for a comfortable chair. However, the ALJ correctly noted an absence of findings associated with sitting discomfort, and properly considered plaintiff's report she limits her sitting due to her fear her ostomy bag will leak. The ALJ reasonably found an absence of examination findings or other support for a medically necessary comfortable chair. The ALJ had also considered other relevant evidence, such as plaintiff's report she had not seen an ostomy nurse between 2012 and 2016, and her 2014 report of no problems with her ostomy. (AR 1351.) Plaintiff contends none of the new evidence of record is clearly *inconsistent* with a medical need for a comfortable chair. The ALJ, however, properly stressed the significance of supportability and consistency. 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."; "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.") The ALJ also provided specific, clear, and convincing reasons for not accepting plaintiff's testimony, including any need to recline. Plaintiff could have, but did not offer testimony of sitting discomfort.

Plaintiff also argues the ALJ erred by failing to accept Dr. West's opinion of her need to take frequent and possibly prolonged breaks, and for a limitation to only rare and urgent squatting, kneeling, crawling, climbing, pushing, and pulling. Yet, Dr. West opined a need for frequent and possibly prolonged breaks with standing and walking for up to five, possibly six hours. The ALJ need not have provided reasons for rejecting that opinion where he found plaintiff *more* limited in standing and walking. The ALJ otherwise provided specific and legitimate reasons for rejecting Dr. West's opinion as to greater limitations in functioning.

/ / /

B. <u>Dr. Beth Liu</u>

Dr. Liu examined plaintiff in August 2015. (AR 1774-78.) Dr. Liu noted physical findings from plaintiff's surgery and her ostomy bag, normal joint range of motion, and normal neurological examination. (AR 1776.) She described plaintiff's condition as chronic and stable, her ostomy bag as life-long, and her prognosis as fair. Dr. Liu opined plaintiff could lift or carry up to ten pounds frequently; stand or walk up to thirty minutes at a time and two hours total; sit up to one hour and four hours total; use her hands for most activities frequently; may need to avoid performing reaching overhead, pushing, or pulling due to ostomy bag; could perform most postural activities occasionally, but should avoid climbing ladders or scaffolds, unprotected heights, and moving mechanical parts; and could operate a motor vehicle short distances.

The ALJ found this opinion mostly consistent with the evidence showing plaintiff had an ostomy bag, but relatively normal examinations, with no recent gastrointestinal and genitourinary symptoms. (AR 1354.) He noted Dr. Liu only examined plaintiff once and did not provide treatment, and found she based at least part of her opinion on plaintiff's own reports.

Plaintiff concedes the ALJ included all of the limitations opined by Dr. Liu in the RFC. This opinion evidence provides support for the ALJ's decision and plaintiff sets forth no assignment of error the Court need address. *See generally Carmickle*, 533 F.3d at 1161 n.2 (court need to address issues not argued with any specificity); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("We require contentions to be accompanied by reasons.")

C. <u>Dr. J. Keith Peterson</u>

Dr. Peterson conducted a psychological evaluation in September 2015. (AR 1780-86.) Observing plaintiff's reported severe problems managing her bowel function and ostomy bag, Dr. Peterson opined her ability to find and keep gainful employment seemed to "depend on these issues

and symptoms." (AR 1785.) He observed her very significant concern for fecal odor, leaking, and bowel sounds related to her ostomy bag, but "would not say that her anxiety and depression are contributing to these concerns, although the reverse may be true and the symptoms may aggravate her anxiety and depression." (*Id*.) Dr. Peterson deferred the medical issue to an independent medical examination. He noted plaintiff's report of difficulties with work attendance and having to leave work due to ostomy issues. He "would not say" the depressive or anxiety disorders would prevent gainful activity, and noted examination did not detect cognitive issues that would serve as an obstacle to work. (AR 1786.) Noting plaintiff's report her ostomy bag management impinged on her ability to drive a car to work, show up on time, attend and stay at work, and her ability to bend over, Dr. Peterson could "see where this issue, combined with her anxiety over the symptoms, would have a significant impact on her ability to relate to coworkers or customers in the workplace." (*Id*.) Plaintiff could, however, learn new material, follow directions, and complete simple and moderately complex tasks, and Dr. Peterson did not observe any issues with stamina.

The ALJ gave some weight to the opinion of Dr. Peterson. (AR 1346.) Dr. Peterson based his opinion on an examination, but conducted only one examination and did not provide treatment. He also based his opinion in part on plaintiff's own reports and on medical issues deferred to an independent medical examiner.

Plaintiff states that Dr. Peterson's findings provide further support for her description of her Crohn's symptoms. The ALJ, as discussed above, provided specific, clear, and convincing reasons for not accepting plaintiff's symptom testimony. As with Dr. Liu, plaintiff does not identify error in the ALJ's consideration of Dr. Peterson's opinion that the Court need address.

/ / /

D. Dr. Gary Gaffield

Dr. Gaffield examined plaintiff in October 2016. (AR 1799-1810.) He noted plaintiff's ostomy bag, intact at the time, but appearing "questionable, complicated by her obesity, and could easily break down." (AR 1809.) Plaintiff had a soft abdomen and active bowel sounds, no herniations of the colon through the ostomy, limited lumbar range of motion and limited sitting capacity due to the ostomy bag, and an otherwise normal examination. Dr. Gaffield opined plaintiff had no limitations in standing and walking in an eight-hour workday with adequate breaks and rest periods, and no limitations with manipulative activities. (AR 1809-10.) However, due to her ostomy bag, plaintiff could sit less than six hours with adequate breaks and rest periods, not lift more than twenty pounds occasionally and ten pounds frequently, perform postural activities occasionally, and "would mainly need to have a clean restroom environment close to her work site to tend to her ostomy bag." (*Id*.)[4]

The ALJ gave some weight to Dr. Gaffield's opinion. (AR 1354.) He found it mostly consistent with the evidence of record showing plaintiff had an ostomy bag, but relatively normal physical findings on examination, with no recent gastrointestinal and genitourinary symptoms. Dr. Gaffield also examined plaintiff, but did so on one occasion and did not provide treatment.

Plaintiff argues the ALJ erred by failing to evaluate all of Dr. Gaffield's findings and opinions, including those regarding limited range of motion, the need for adequate breaks and rest periods to sit, and the inability to bend and squat. The Court disagrees.

The "final responsibility" for decision issues such as an individual's RFC "is reserved to

---

[4] As the Commissioner observes, Dr. Gaffield provided some slightly different opinions in a checkbox form. (AR 1799-1804.) Like both the ALJ and plaintiff, the Court focuses on the opinions provided in narrative form. (AR 1809-10.)

the Commissioner."   SSR 96-5P.   *Accord* 20 C.F.R.  §§  404.1527(d)(2),  416.927(d)(2), 404.1546(c), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015).  The ALJ's findings need only be consistent with, not identical to limitations assessed by a physician. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

The ALJ here found plaintiff significantly more limited than assessed by Dr. Gaffield, with the ability to stand or walk for no more than thirty minutes at a time and two hours total, to sit no more than one hour at a time and four hours total, a maximum ten pound lifting or carrying restriction, and no more than occasional overhead reaching, pushing, or pulling.  The ALJ's assessment is, at the least, consistent with Dr. Gaffield's opinion of no limitations in standing and walking and sitting less than six hours with adequate breaks and rest periods, and accounted for in the VE testimony providing for standard breaks every two hours and being off-task three to six percent of the time (AR 1447).  Plaintiff provides no support for her contention adequate breaks and rest periods would require something more than standard breaks, or more than accounted for in the RFC.

The ALJ's assessment also accounts for Dr. Gaffield's finding of limited range of motion through the postural and other RFC limitations.  In addition, while Dr. Gaffield stated plaintiff was "unable to hop, bend, and squat, afraid that the bag would detach itself[]" and that he "certainly did not want to expose her to that event[,]" he did not identify any limitations in bending or squatting.  (AR 1808-10.)  He noted plaintiff's ability to arise from chairs in the waiting and examination rooms without effort, to get on and off the examination table without difficulty, and to arise from supine to sitting without turning on her side.  (AR 1808.)

/ / /

1    E.    Non-examining Physicians

2            Plaintiff avers error in relation to the opinions of non-examining State agency physicians

3    Drs. Staley and Stevick.  (AR 82-84, 92-94, 107-08, 120-22, and 1356.)  She asserts the ALJ gave

4    a somewhat confusing analysis, stating both that he gave "great weight" to these opinions and that

5    new evidence indicated a "greater capacity" than they originally opined.  (AR 1356.)  She contends

6    the ALJ erred in failing to acknowledge that the opinions of the examining doctors were entitled

7    to more weight than the opinions of the non-examiners.

8            The opinions of examining doctors are, as a general matter, entitled to more weight than

9    the opinions of non-examining doctors.  *Lester*, 81 F.3d at 830.  However, non-examining State

10   agency consultants are highly qualified and experts in the evaluation of Social Security disability

11   claims and, while not binding, their opinions must be considered.  20 C.F.R. §§ 404.1513a(b)(1),

12   416.913a(b)(1).  While their opinions would not alone justify rejecting the opinion of an examining

13   or treating doctor, *Lester*, 81 F.3d at 831, their findings can amount to substantial evidence so long

14   as supported by other evidence in the record, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

15           The ALJ considered the status of the doctors who offered medical opinions in this case.

16   He described the examining relationship between plaintiff and the other medical sources, and

17   stated Drs. Staley and Stevick "are non-treating, non-examining medical sources."  (AR 1356.)

18   The ALJ appropriately considered that they based their opinions on a thorough review of the record

19   and their comprehensive understanding of agency rules and regulations, while also considering

20   new information received after their 2012 opinions, including the report from Dr. Gaffield.  (AR

21   1356.)  Plaintiff does not identify error in either the ALJ's discussion of their opinions or the

22

23

1    weight assigned.[5]

2                                    RFC and Conclusions and Steps Four and Five

3           Plaintiff avers error in the RFC, VE hypothetical, and the decision at step five as a result

4    of the alleged errors discussed above.  This mere restating of arguments does not establish error.

5    *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

6           Plaintiff also identifies separate errors at steps four and five.  She maintains only her work

7    as a data entry clerk in 2003 appears to have been performed at substantial gainful activity (SGA)

8    levels, meaning the step four conclusion "is almost entirely erroneous."  (Dkt. 12 at 18.)  She

9    asserts no competent evidence she could perform her past relevant work as a data entry clerk with

10   either her actual limitations or those included in the RFC.  She argues the VE testified an inability

11   to stand and sit for more than a total of six hours ruled out all of the light and sedentary jobs

12   identified in response to the hypothetical containing all of the RFC limitations.  (*See* AR 1442-46.)

13   Finally, plaintiff avers error in the ALJ's reliance, in part, on VE testimony from her first hearing,

14   given that that testimony was made in response to an incomplete hypothetical.

15          The Commissioner responds that, even if the ALJ erred in finding plaintiff could perform

16   past relevant work, that error would be harmless because the ALJ properly decided plaintiff could

17   perform other work.  *Tommasetti*, 533 F.3d at 1037.  She disagrees the VE ruled out plaintiff's

18   ability to perform the jobs of production line solderer and electrical assembler.  (*See* AR 1444-45.)

19   The Commissioner avers a significant number of those jobs to support the step five finding and

20   that the ALJ properly relied on VE testimony from the third and final hearing.

21   _____

22          [5] Plaintiff also asserts the ALJ failed to properly evaluate all of the medical evidence of record and
     includes a three-page description of evidence as providing an objective basis for her symptoms.  To the
     extent plaintiff intends this argument to be viewed separate and apart from the ALJ's evaluation of symptom
23   testimony, her recitation of medical records does not amount to or contain a specific and distinct argument
     properly considered by the Court.

As plaintiff avers, the VE at the first hearing offered testimony in response to a hypothetical that does not match the RFC. (*See* AR 58-64.) The ALJ could not rely on that testimony in relation to past work or the sedentary jobs of charge account clerk and call out operator identified at step five. *Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the [VE] must 'set out all of the claimant's impairments.' If the record does not support the assumptions in the hypothetical, the [VE's] opinion has no evidentiary value.") (quoted source omitted). The Commissioner appeared to concede this argument by stating the VE properly relied on the testimony from the third and final hearing.

At the third hearing, the VE testified plaintiff could perform a number of her past jobs in response to an initial hypothetical limiting her to light work, no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing, no exposure to hazards or to a concentrated exposure to vibration, and allowing for ready access to a clean restroom within 100 feet of the workstation. (AR 1440-42.) Contrary to plaintiff's contention, more than one of her past jobs appear to have been performed at the SGA level. (*See* AR 229, 245 (earnings and job history report); SSR 83-35 ("Earnings are generally averaged over the actual period of time in which the work was performed."); Program Operations Manual System DI 10501.015(B) (identifying amounts of average monthly earnings indicating a person is working at SGA levels as follows: $800 in 2003; $940 in 2008; and $1,000 in 2011).) However, the ALJ did not ask and the VE did not offer any testimony regarding plaintiff's past work in relation to the second, RFC-consistent hypothetical.[6] (*See* AR 1440-51.) Nor did the ALJ identify other support in the record for a

_____

[6] The ALJ did not reiterate all of the limitations contained in the first hypothetical in the second hypothetical proffered. However, it is clear the VE understood that, except where explicitly modified, the second hypothetical incorporated the initial limitations. (*See* AR 1440-48.) For example, the VE testified the jobs identified in response to the second hypothetical would, with limited exceptions, provide for a restroom within at least 100 feet of the workstation. (AR 1441-41.) Also, none of the jobs identified require

conclusion plaintiff could perform her past work as either actually or generally performed. (*Cf.* AR 265-72 (plaintiff stated, for example, her work in 2003 and 2004 as a data entry clerk or administrative clerk involved one-to-two hours walking, three-to-four hours standing, and four-to-five hours sitting).) The Court therefore cannot conclude there is substantial evidence support for the ALJ's decision at step four. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (finding no error where ALJ omitted a limitation from hypothetical to VE, but other reliable evidence supported the ALJ's conclusion plaintiff could perform his past work, including plaintiff's own testimony his past work allowed for that limitation and the ALJ's finding plaintiff's pain complaints were not credible; "The [VE's] testimony was thus useful, but not required.").

With regard to step five, the VE at the third hearing offered testimony in response to a hypothetical matching the RFC except that it included a limitation to frequent handling, a limitation the ALJ did not adopt. (AR 1442-43, 1348-49.) *See also supra* n.6. The VE identified the jobs of production line solderer and electrical accessories assembler as meeting the hypothetical as stated by the ALJ. (AR 1444-45.) The VE's testimony also provides for the conclusion plaintiff could perform the job of semiconductor dies loader given that the only conflict identified– a limitation to frequent handling – was not included in the RFC. (*Id.*)

The ALJ subsequently asked whether the jobs identified would entail walking amounting to about two hours cumulatively in a day. The VE responded:

> Potentially they can. It just kind of – you know it depends. I mean I would say conservatively in most of the jobs that I have seen the walking option will not extend completely to the two hours. They usually are only walking a few feet to maybe 20[ feet]. Maybe 30 at the very outside. And of course that's not going to take that long

---

any balancing, stooping, kneeling, crouching, or crawling. *See* DICOT 726.687-030 (production line solderer), 1991 WL 681592; DICOT 729.687-010 (electrical accessories assembler), 1991 WL 679733; and DICOT 726.687-030 (semiconductor dies loader), 1991 WL 679637.

and then they'll stand for a minute, a moment really, putting an item on a cart or a shelf or whatever, getting another item to fix or do whatever they have to do with it. And then – and then going back to the – to the workstation. So if that activity total we're probably talking certainly less than five minutes. Now if the individual then can stand and – and then sit back down but that walking – see I would be real – I would be real concerned about that.

(AR 1445-46.) The VE further testified there were no other occupations that fit the hypothetical and allow for two hours of walking, and stated: "I mean it's so – we're right on the minimal line." (AR 1446.)

The ALJ concluded that, based on the testimony of the VE, plaintiff was capable of making an adjustment to work that exists in significant numbers in the national economy. The ALJ did not, however, address the VE's qualification of her testimony regarding two hours of walking and the jobs of production line solderer and electric accessories assembler. Nor had the ALJ, at hearing, asked whether that qualification resulted in a smaller number of those jobs fitting the hypothetical. It is further not clear what impact, if any, the ALJ's qualification would have had in relation to the semiconductor dies loader position had it not been eliminated with consideration of handling. The Court, under these circumstances, cannot conclude there is substantial evidence support for the ALJ's conclusion at step five.

This matter is properly remanded for further administrative proceedings. That is, the Court finds further proceedings would serve a useful purpose, that outstanding issues must be resolved before a disability determination can be made, and that this matter is not otherwise properly remanded for an award of benefits. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015); *Treichler*, 775 F.3d at 1099-1105. On remand, the ALJ must address whether there is reliable evidence supporting a conclusion plaintiff could perform past relevant work and whether there are a significant number of other jobs in the national economy plaintiff could perform.

## <u>CONCLUSION</u>

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this <u>6th</u> day of December 2018.

Mary Alice Theiler
United States Magistrate Judge